## WILLIAMS, GOVERNOR, ET AL. v. MANSUR.

STATE-HOUSE COMMISSIONERS.—*Power to Pay Rent out of New State-House Fund.*—The 3d section of the act of March 14th, 1877, Acts 1877. Spec. Sess., p. 68, to authorize and provide for the erection of a State-House, provides that " when it becomes necessary they " (the State-House Commissioners) " shall cause the old building to be removed, and they shall provide temporary quarters for the General Assembly, and for the officers now occupying the present building," etc.

*Held*, that, while the rent which might be paid for such temporary quarters could constitute no part of the cost of the construction of the new building, yet the direction to the commissioners to furnish such quarters implied the power and duty to pay therefor, which may be done out of the fund known as the " New State-House Fund," there being no other available for that purpose.

From the Marion Superior Court.

*T. W. Woollen.* Attorney General, for appellants.

*H. J. Milligan,* for appellee.

WORDEN, J.—Under the provisions of the act of March 14th, 1877, to authorize and provide for the erection of a State-House, etc.. Acts 1877, Spec. Sess., p. 68, the Board of State-House Commissioners took a lease of a building known as the Gallup Block, for the use of some of the officers of State, the old State-House having been torn

down and removed, at an annual rent of two thousand dollars, payable quarterly. There being no fund especially appropriated to the payment of this rent, except the fund known as the New State-House Fund, to be hereafter noticed, the appellee, to whom the rent is due, instituted this proceeding by way of mandate, to require the rent to be paid out of the New State-House Fund.

Demurrer to the petition for want of sufficient facts sustained at special term, but judgment reversed at general term.

The only question presented is whether the rent in question is properly payable out of the New State-House Fund. We think it is, and, therefore, that the decision of the court below, at general term, was right.

It is perhaps important to the Board of State-House Commissioners to know definitely the ground of our decision, and the construction which we place upon the statute above noticed.

The act above mentioned contemplates the building of a new State-House, at an expense not to exceed $2,000,000. Thus, in the 1st section of the act, it is provided that the commissioners shall give a bond conditioned, among other things, "that the cost of the building shall not exceed $2,000,000." Again, in the 3d section, it is provided that "the Board of State-House Commissioners are authorized and directed, as herein provided, to build a new State-House, the cost of which shall not exceed $2,000,-000," etc. Again, in the 4th section, the commissioners are authorized to adopt a suitable plan for a building which "can be constructed within the limit of $2,000,000." These provisions exhibit unequivocally an intent on the part of the Legislature, that the sum of $2,000,000, if necessary, and no more, shall be expended in the construction of the new State-House. The sum of $2,000,000 was doubtless intended to cover every thing pertaining to the

construction of the new State-House, including salaries of commissioners, secretary to the board, etc.; but it was not intended to cover rent of property which might be occupied by other State officers during the time the new State-House is in process of construction. Such rent is no more a part of the cost of the construction of the new State-House than is any other expense to which the State might be subjected during the same time. As well might the salaries of State officers be charged up as part of the cost of the construction of the new State-House, as the rent which the State might pay for offices occupied by them during the time the new building is being constructed.

The sum of two millions, thus designated as the extreme cost of the construction of the new State-House, is clearly not to be diminished by any rent which the State may have to pay for office rent for her officers during the time the new building is in process of construction. Yet it does not follow that such rent is not properly payable out of the fund known as the New State-House Fund.

The 3d section of the act in question provides that " when it becomes necessary they " (the commissioners) " shall cause the old building to be removed, and they shall provide temporary quarters for the General Assembly, and for the officers now occupying the present building," etc.

It is thus seen that, while the rent which might be paid for such temporary quarters for the General Assembly, and for the officers then occupying the old building, could constitute no part of the cost of the construction of the new one, yet the commissioners were required to furnish such temporary quarters; and this direction to furnish temporary quarters implied the power and duty to pay therefor, if there was any fund provided, within the control of the commissioners, out of which payment could be made.

The 11th section of the act is as follows:

"There shall be assessed, in the year 1877, the sum of one cent upon each one hundred dollars worth of taxable property in the State, to be collected as other State taxes, assessed at the same time, are collected. And in the year 1878, there shall be assessed and collected, as aoove, the sum of two cents upon each one hundred dollars worth of taxable property in the State, which money, when collected and paid into the State Treasury, shall be kept and known as the New State-House Fund; and the proceeds of the tax, herein levied, is hereby appropriated to the use of the State-House commissioners, as hereinbefore provided."

A levy of two cents on each one hundred dollars worth of taxable property was made for the same purpose for each of the years 1879 and 1880. Acts 1879, p. 195.

As has already been seen, the commissioners were authorized to furnish quarters for the officers occupying the old State-House, when it should be torn down to give place to the new one ; and the section of the statute above quoted furnishes a fund out of which payment can properly be made. The designation of the fund, in the section quoted, as the "New State-House Fund," does not, in view of the entire provisions of the statute, imply that it is all to be expended in the construction of a new State-House ; but it may be applied, as far as necessary, in paying rent for offices which the commissioners are required to furnish.

The judgment below is affirmed, with costs.